# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: June 7, 2021

* * * * * * * * * * * * * *     *
SHARON HUGHES,                  *          UNPUBLISHED
                                *
            Petitioner,         *          No. 18-1895V
                                *
v.                              *          Special Master Nora Beth Dorsey
                                *
SECRETARY OF HEALTH             *          Finding of Fact; Onset; Influenza ("Flu")
AND HUMAN SERVICES,             *          Vaccine; Shoulder Injury Related to
                                *          Vaccine Administration ("SIRVA").
            Respondent.         *
                                *
* * * * * * * * * * * * * *     *

Milton Clay Ragsdale, Ragsdale LLC, Birmingham, AL, for petitioner.
Benjamin P. Warder, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON FACTS[1]

On December 10, 2018, Sharon Hughes ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012).[2]  Petitioner alleged that she suffered a right shoulder injury as the result of an influenza ("flu") vaccination she received on October 30, 2017.  Petition at 1 (ECF No. 1).

Prompting this fact ruling is Respondent's Rule 4(c) Report, filed March 25, 2020, in which respondent asserted that the petitioner failed to provide evidence to support her "allegation

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the Ruling will be available to anyone with access to the Internet**.  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012).  All citations in this Ruling to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

that she had the onset of right shoulder pain within 48 hours of her October 30, 2017 vaccination."  Respondent's Report ("Resp. Rept.") at 9 (ECF No. 21).  Thereafter, a status conference was held during which the parties agreed to a fact hearing to determine the onset of petitioner's shoulder injury.  Order dated Apr. 15, 2021 (ECF No. 36).  A fact hearing was held on May 18, 2021.

After a review of the record as a whole, testimony given at the fact hearing, and for the reasons set forth below, the undersigned finds by preponderant evidence that the onset of petitioner's shoulder injury occurred within 48 hours of her flu vaccination.

## I.    PROCEDURAL HISTORY

On December 10, 2018, petitioner filed a petition for compensation alleging a right shoulder injury related to vaccination ("SIRVA") as the result of her October 30, 2017 flu vaccination.  Petition at 1.  Petitioner filed medical records and a statement of completion shortly thereafter.  Petitioner's Exhibits ("Pet. Exs.") 1-10; Statement of Completion, filed Feb. 5, 2019 (ECF No. 9).  Petitioner subsequently filed additional medical records on December 16, 2019.  Pet. Ex. 11.

On March 25, 2020, respondent filed his Rule 4(c) Report arguing petitioner was not entitled to compensation because she had failed to provide evidence to support her "allegation that she had the onset of right shoulder pain within 48 hours of her October 30, 2017 vaccination."  Resp. Rept. at 9.  Petitioner filed affidavits in support of her case on July 23, 2020.  Pet. Exs. 12-15.  On July 30, 2020, this case was reassigned to the undersigned.  Order of Reassignment dated July 30, 2020 (ECF No. 25).  Petitioner was ordered to file an expert report, however, after a status conference on April 15, 2021 and party conversations about appropriate hearing dates, the parties scheduled a fact hearing for May 18, 2021.  See Order dated Aug. 25, 2020 (ECF No. 28); Order dated Apr. 15, 2021 (ECF No. 36); Joint Status Rept., filed Apr. 19, 2021 (ECF No. 38).  Prior to the hearing, petitioner filed affidavits.  Pet. Exs. 18-20.

## II.   ABREVIATED MEDICAL HISTORY

On October 30, 2017, petitioner received the flu vaccine in her right arm at Publix Pharmacy.  Pet. Ex. 1 at 7.  Petitioner had no previous right shoulder pain or injury, except on January 10, 2017, when she presented to Dr. Dilip Shah for right shoulder pain of the trapezius muscle.  Pet. Ex. 7 at 14.

On May 1, 2018, petitioner returned to Dr. Shah due to an upper respiratory infection and low-grade fever with chills and leg aches.  Pet. Ex. 7 at 16.  The records of that visit do not document any complaints of right shoulder pain.

Petitioner presented to Nurse Practitioner ("NP") Anna Gully on May 17, 2018, for right arm pain following the flu shot.  Pet. Ex. 3 at 4.  NP Gully noted petitioner's pain was present for six months and her right shoulder pain was constant.  Id.  An exam revealed positive Empty Can, Hawkin's Impingement, and Speed's tests.  Id.  Petitioner's shoulder strength was approximately 4/5 and she had mostly normal range of motion, but with pain.  Id. at 4-5.  An X-ray performed

2

at this appointment showed "mild degenerative change at the AC joint, but otherwise normal." Id. at 5.  NP Gully ordered an MRI on petitioner's right shoulder.  Id.

On May 21, 2018, petitioner presented to Dr. Michael Patterson, orthopedic surgeon, for consultation of right shoulder impingement.  Pet. Ex. 6 at 6-7.  Petitioner reported pain in her shoulder for six months following the flu shot.  Id. at 6.  After review of petitioner's X-ray and MRI, Dr. Patterson administered a Marcaine and dexamethasone shot and recommended formal physical therapy.  Id. at 7.

Petitioner returned to NP Gully on May 23, 2018 to discuss results of her MRI.  Pet. Ex. 3 at 3.  The MRI showed mild fraying of petitioner's anterior labrum, but no other definite tear was seen.  Pet. Ex. 5 at 7.  They discussed possible physical therapy.  Pet. Ex. 3 at 3.

On June 20, 2018, petitioner presented to Dr. Patterson.  Pet. Ex. 6 at 4.  Petitioner reported her pain was unchanged.  Id.  Dr. Patterson recommended continuing her home physical therapy exercises and ice before considering arthroscopic evaluation and decompression.  Id. at 5.

Petitioner continued to have shoulder pain, and on July 17, 2018, she underwent arthroscopic subacromial decompression surgery for right shoulder impingement.  Pet. Ex. 8 at 4. Petitioner returned to Dr. Patterson on July 31, 2018 for her post-operative appointment.  Id. at 8. She was doing well and progressing with physical therapy.  Id.  On September 14, 2018, Dr. Patterson reported petitioner was having no pain and finished her physical therapy.  Id. at 12. Petitioner returned to Dr. Patterson on December 19, 2018 due to increasing right shoulder pain. Pet. Ex. 10 at 4.  Dr. Patterson noted petitioner was no longer doing her exercises and recommended conservative treatment of ice and to take anti-inflammatories.  Id. at 4-5.

## III.   TESTIMONY

Petitioner testified during the hearing on May 18, 2021.  Petitioner is a cardiovascular technician at Shelby Baptist Hospital.  Transcript ("Tr.") 6.  Petitioner's professional duties include conducting stress tests, attaching heart monitors, assisting in moving patients, and performing paperwork.  Tr. 6-7.  On October 30, 2017, petitioner received a flu vaccination in her right arm at Publix.  Tr. 7, 16.  Petitioner recalled when the vaccine was administered, there was a slight burning sensation and her arm was sore.  Tr. 8.  Petitioner felt sore the next day when she lifted her arm to perform her regular professional duties, such as washing her hands in the break room and taking patients' blood pressures during routine stress tests.  Tr. 10.  She also described moving patients as more difficult.  Tr. 11.

During the week after her vaccination, petitioner's arm became progressively more "achy" and her pain increased from a 2/10 to 5/10.  Tr. 9, 11.  Petitioner recalled having to change cars when driving to work, from a manual car to an automatic one, because shifting gears aggravated her injury.  Tr. 12.  Petitioner complained of her pain to her husband and multiple coworkers.  Tr. 11-12.

Around the second week after the flu vaccination, petitioner's pain rating in her right arm increased to a 7/10. Tr. 15. She reported her arm was achy and sore and the area where the shot was given was warm, like a "fever." Tr. 16. In December 2017, petitioner stated that she cancelled her plans to watch her daughter's children because of the pain in her arm. Tr. 18.

After vaccination, petitioner began to treat her pain with three Motrin pills twice daily and would apply ice and heat packs. Tr. 19. After her pain became gradually worse, petitioner sought medical care in May 2018. Tr. 20-22. Petitioner eventually had surgery on her shoulder. She has recovered and currently has no pain. Tr. 25.

Mr. Joseph Allen Hughes, petitioner's husband, also testified at the hearing. Mr. Hughes recalled the evening after petitioner's vaccination, petitioner stated her arm was sore. Tr. 42. Mr. Hughes stated petitioner called him the next morning while driving to work and complained about shifting gears in her car. Tr. 43. A week after her vaccination, Mr. Hughes stated he was worried because his wife was still in pain. Tr. 47. Mr. Hughes stated her pain got progressively worse as time went by. Tr. 56.

Ms. Michelle Borcicky, registered nurse ("RN"), petitioner's coworker testified. Ms. Borcicky stated she and petitioner ran stress tests together at Shelby Baptist Hospital and while petitioner gets the patient ready, Ms. Borcicky explains what the process will be like. Tr. 59-60. The next day after the flu vaccine, petitioner told Ms. Borcicky that her arm was sore. Tr. 61. Within 48 hours, Ms. Borcicky noticed petitioner's pain increased and it was more difficult for petitioner to complete her professional responsibilities. Tr. 62.

Ms. Annette Massey, RN, another of petitioner's coworkers, testified at the hearing. Ms. Massey stated she would sometimes work with petitioner during stress tests. Tr. 74. Ms. Massey stated petitioner's arm was sore the day after vaccination. Tr. 75. Petitioner told Ms. Massey her arm was getting worse and worse. Id. Within 48 hours, Ms. Massey noticed it was painful for petitioner to reach up to prepare patients for the stress tests. Tr. 76. Ms. Massey knew petitioner was in pain, so would not ask her to assist in moving patients, which she normally would help with. Tr. 77.

## IV.   PARTIES' CONTENTIONS

In her affidavit, petitioner alleged the same day she received her flu shot at Publix Pharmacy, she experienced "unusual soreness." Pet. Ex. 2 at ¶¶4-5. Petitioner complained about her pain to her husband the next day, but thought the pain would be temporary and did not seek medical treatment. Pet. Ex. 12 at ¶1. Petitioner stated she had no other right shoulder pain and her complaint of right arm pain in January 2017 was related to her shoulder blade and back, not her shoulder joint. Id. at ¶2. Her symptoms became progressively worse and she sought medical care with an orthopedic surgeon in May 2018. Pet. Ex. 2 at ¶5. Treatment led to right arm surgery in July 2018. Id.

In his Rule 4(c) Report, respondent argued that petitioner was not entitled to compensation. Resp. Rept. at 1. First, respondent argued that petitioner "had pre-existing right shoulder pain dating back to January 10, 2017, at least nine months prior to the flu vaccination at

issue in this case." Id. at 8.  Second, "contemporaneous medical records fail to support petitioner's allegation that she had the onset of right shoulder pain within 48 hours of her October 30, 2017 vaccination." Id. at 9.  Third, respondent found petitioner's affidavit "inconsistent with the contemporaneous record generated on May 17, 2018, at which time she reported a 'gradual onset of pain' after her flu vaccination." Id.

## V.    DISCUSSION

### a.  Applicable Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim.  13(a)(1)(A).  To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony.  See Burns v. Sec'y of Health & Hum. Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records).  Contemporaneous medical records are presumed to be accurate.  See Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).  To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." Sanchez v. Sec'y of Health & Hum. Servs., No. 11-0685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing Blustein v. Sec'y of Health & Hum. Servs., No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

### b.  Evaluation of the Evidence

At the conclusion of the proceeding, the undersigned informed the parties that she intended to issue a ruling from the bench.  See Tr. 85.  Both parties agreed to this proposed action.  Id.  After a short recess, the undersigned returned and read her ruling into the record.  Tr. at 86-89.

The undersigned stated that the issue to be resolved was a determination of onset of petitioner's symptom of right shoulder pain.  Tr. 86.  With regard to the onset of symptoms, the undersigned found that "petitioner's right shoulder pain occurred within 48 hours." Id.  The reasons for the ruling are set forth in the transcript from the hearing at pages 86 to 89, and incorporated herein by reference as if fully set forth.

## VI.   CONCLUSION

The undersigned finds, based on the record as a whole, that the onset of petitioner's symptoms occurred within 48 hours of petitioner's flu shot on October 30, 2017.

The following is **ORDERED**:

Respondent shall file an Amended Rule 4(c) report, reflecting the Fact Ruling, in forty-five (45) days, or **by Thursday, July 22, 2021**.

**IT IS SO ORDERED.**

<u>**s/Nora Beth Dorsey**</u>
Nora Beth Dorsey
Special Master